**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

**ERIC HEARD, individually and d/b/a DIXIANA WHOLESALE,**

***Plaintiff,***

**v.**

**TOWN OF SALLEY, SOUTH CAROLINA; MAYOR RONALD STURKIE, in an individual capacity; COUNCILMEMBER RONALD HALL, in an individual capacity; COUNCIL MEMBER CHRIS HARTLEY, in an individual capacity; COUNCIL MEMBER MARK HARTLEY, in an individual capacity; COUNCIL MEMBER LEAH SHACKLEFORD, in an individual capacity; and JOHN/JANE DOE TOWN OFFICIALS 1-5,**

***Defendants.***

**COMPLAINT AND JURY DEMAND**

**Civil Action No.** 1:26-cv-5328-MGL

Comes now Plaintiff Eric Heard, by and through undersigned counsel, and brings the following complaint against Defendants:

## NATURE OF THE ACTION

1. This is a civil-rights action arising from the Town of Salley's racially discriminatory refusal to continue or renew a commercial tenancy in a Town-owned warehouse, followed by a physical lockout that deprived Plaintiff of access to his business and inventory.

2. For years, the Town permitted prior operators of the same business to occupy the warehouse through an informal, oral, or month-to-month arrangement. According to the presently available information, those prior operators were white.

3. When Plaintiff, a Black businessman, acquired the business and sought to continue the same arrangement, Town officials first represented that renewal would not

be a problem. The Town then abruptly changed course, barred Plaintiff from the warehouse, threatened escalating penalties, and offered shifting explanations for its conduct.

4. The Town's refusal to deal with Plaintiff on the same terms afforded to white predecessors, and its use of municipal authority to lock him out and interfere with his property, violated the Equal Protection Clause and the federal rights secured by 42 U.S.C. §§ 1981 and 1982. The Town's Council members are liable under 42 U.S.C. § 1983 because the challenged decisions were made or ratified by the Town Council, which has final policymaking authority over the leasing of municipal real property.

5. Plaintiff also seeks relief for the Town's unconstitutional deprivation and seizure of his business property and, in the alternative, for breach of the parties' month-to-month tenancy and tortious interference with Plaintiff's possession of his goods.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. §§ 1981, 1982, 1983, and 1988.

7. This Court has supplemental jurisdiction over Plaintiff's related South Carolina claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's Federal claims.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Town is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in Aiken County, South Carolina.

9. The Aiken Division is the proper division because the events occurred in Aiken County and the Town-owned property is located there.

## PARTIES

10. Plaintiff Eric Heard is a Black citizen of the United States and a resident of Richmond County Georgia. He purchased and operated the business known as Dixiana Wholesale. Plaintiff subjects himself to the jurisdiction of this Court.

11. Defendant Town of Salley, South Carolina (the "Town"), is a municipal corporation and political subdivision of the State of South Carolina located in Aiken

County. The Town owned and controlled the warehouse at issue. The Town of Salley may be served by delivering service on its Clerk, Tina Salley, at 161 Railroad Ave. N, Salley, SC 29137.

12. Defendant Mayor Ronald Sturkie was at all relevant times, an elected or appointed Town official who participated personally in the decision to deny Plaintiff access to the warehouse, impose or threaten penalties, and refuse to continue or renew the tenancy. Mr. Sturkie can be served at 121 Pine ST NW, Salley, SC 29137.

13. Defendant Councilmember Ronald Hall was, at all relevant times, an elected or appointed Town official who participated personally in the decision to deny Plaintiff access to the warehouse, impose or threaten penalties, and refuse to continue or renew the tenancy. Mr. Hall can be served at 136 Poplar ST SE, Salley, SC 29137.

14. Defendant Councilmember Chris Hartley was, at all relevant times, an elected or appointed Town official who participated personally in the decision to deny Plaintiff access to the warehouse, impose or threaten penalties, and refuse to continue or renew the tenancy. Mr. Hartley can be served at 225 Railroad Ave. N, Salley, SC 29137.

15. Defendant Councilmember Mark Hartley was at all relevant times, an elected or appointed Town official who participated personally in the decision to deny Plaintiff access to the warehouse, impose or threaten penalties, and refuse to continue or renew the tenancy. Mr. Hartley can be served at 54 Hartley DR A, Salley, SC 29137.

16. Defendant Councilmember Leah Shackleford was at all relevant times, an elected or appointed Town official who participated personally in the decision to deny Plaintiff access to the warehouse, impose or threaten penalties, and refuse to continue or renew the tenancy. Ms. Shackleford can be served at 126 Maple ST, Salley, SC 29137.

17. Defendants John/Jane Doe Town Officials 1-5 are Town officials or employees whose identities are presently unknown and who participated in, directed, implemented, approved, or ratified the challenged conduct. Plaintiff will amend this Complaint when their identities are confirmed.

18. At all relevant times, the individual Defendants acted under color of state law and within or under the apparent authority of their municipal offices.

## FACTUAL ALLEGATIONS

### A. The Town's Longstanding Informal Tenancy

19. The Town owns a commercial warehouse located at or near 115 Depot Avenue Southeast, Salley, South Carolina 29137 (the "Warehouse").

20. For approximately ten years, Stan Fish operated a wholesale business from the Warehouse under an oral or informal arrangement with the Town. The arrangement was treated as a month-to-month tenancy, and the operator paid approximately $1,000 per month.

21. Fish did not have a conventional written lease approved by ordinance. Nevertheless, the Town knowingly permitted him to possess the Warehouse, operate the business, store inventory there, and continue paying rent.

22. Michael Chavous later acquired the business from Fish and continued operating from the Warehouse under substantially the same arrangement. The Town permitted Chavous to remain and accepted the continuation of the tenancy.

23. Upon information and belief, Fish and Chavous are white.

24. The Town did not use the absence of a formal written lease as a basis to immediately lock Fish or Chavous out of the Warehouse or deny them access to their inventory.

### B. Plaintiff Purchases and Continues the Business

25. In or about April 1, 2025, Plaintiff purchased Dixiana Wholesale, its inventory, and its operating assets from Chavous.

26. Plaintiff continued the same business at the same Warehouse and sought to continue or renew the existing month-to-month arrangement with the Town.

27. Plaintiff informed Town officials of the change in ownership and asked the Town to formalize or renew the tenancy.

28. Town Councilmember Chris Hartley told Plaintiff, in substance, that renewal should not be a problem and that Hartley and Councilmember Ronald Hall would get the matter completed.

29. In reliance on the Town's prior course of dealing and its officials' representations, Plaintiff maintained inventory and business property in the Warehouse and continued preparing to operate the business.

30. The Town knew Plaintiff was the new owner and knew his race before it reversed course and denied him the tenancy.

### C. The April 30, 2025, Lockout and Refusal to Renew

31. On or about April 30, 2025, the Town, acting through Councilmember Hall and other Town personnel, placed a chain and lock on the Warehouse and barred Plaintiff from entering.

32. The lockout occurred before the Town provided Plaintiff with a meaningful predeprivation hearing, a judicial writ of possession, or lawful process authorizing the seizure of his access to the premises and inventory.

33. Town officials told Plaintiff that he lacked a lease and business license, that no one could enter until the Town decided whether to rent the Warehouse, and that he had to vacate.

34. Town officials also threatened Plaintiff with a penalty or charge of approximately $500 per day.

35. Plaintiff's inventory, equipment, records, and other business property remained inside the Warehouse, beyond his ordinary possession and control.

36. The Town did not afford Plaintiff the same transition, tolerance, or opportunity to continue the informal tenancy that it had afforded the prior white operators.

37. The Town Council knew of, directed, approved, or ratified the refusal to renew and the lockout. The decision concerned the disposition and leasing of Town-owned real property, a subject committed by South Carolina law to the municipal council.

38. The challenged conduct therefore reflected an official decision of the Town's final policymaker, not merely an unauthorized act of a low-level employee.

### D. Shifting Explanations and Continued Interference

39. After the lockout, the Town gave multiple and changing explanations for its conduct, including the absence of a written lease, an allegedly improper transfer between prior operators, the absence of a business license, a need for repairs, the possibility of a higher rental rate, and the possibility that the Town might sell or otherwise dispose of the Warehouse.

40. On or about May 12, 2025, the Town sent a letter purporting to terminate a month-to-month lease associated with Chavous and asserting that the transfer from Fish to Chavous had been improper.

41. The Town's post-lockout reliance on a purported defect in the earlier Fish-to-Chavous transfer was inconsistent with the Town's own longstanding acceptance of Chavous's occupancy and performance.

42. The Town also asserted that repairs were necessary before the Warehouse could be leased, while at other times indicating that it might lease the Warehouse at a higher rate or return to a lease with Plaintiff. These shifting explanations support an inference that the stated reasons were pretextual.

43. The Town continued to restrict Plaintiff's access to his inventory. When Plaintiff sought police assistance, he was told the matter was civil.

44. In August 2025, after counsel advised the Town that lawful eviction procedures were required, the Town's attorney and Council addressed removal of the locks and the Town's responsibility for utilities.

45. The lock was later removed, but only after Plaintiff had already suffered loss of use, business interruption, lost sales, carrying costs, damage to inventory or goodwill, and other economic harm.

46. Sometime in October 2025 the warehouse was leased again by the Town, by Plaintiff's knowledge and belief, to a white tenant.

47. The Town's treatment of Plaintiff was not an evenhanded enforcement of neutral lease formalities. It was a materially harsher response to a Black purchaser who sought to continue the same commercial arrangement the Town had tolerated for white operators.

## E. Municipal Policy and Final Policymaking Authority

48. Under South Carolina law, all municipal powers are vested in the municipal council, and the sale or lease of municipal land must be authorized by ordinance.

49. The Town Council therefore possessed final policymaking authority over whether and on what terms the Warehouse would be leased.

50. The decision to refuse Plaintiff a renewal or continuation, and the implementation and ratification of the lockout, were made by the Council or by officials whose actions the Council approved and adopted.

51. Alternatively, the Town maintained a custom or practice of allowing favored white operators to use municipal property through informal arrangements, while selectively invoking formal requirements against Plaintiff because of race.

52. The Town's policy, final decision, ratification, custom, or deliberate choice was the moving force behind Plaintiff's injuries.

### F. Damages

53. As a direct and proximate result of Defendants' conduct, Plaintiff lost access to business premises and inventory, lost sales and profits, incurred relocation, storage, labor, financing, and professional expenses, and suffered damage to property, reputation, goodwill, and business relationships.

54. Plaintiff also suffered humiliation, frustration, inconvenience, and emotional distress from being singled out for discriminatory municipal treatment.

55. The precise amount of Plaintiff's damages will be proven at trial.

## COUNT I

## Race Discrimination in Violation of the Equal Protection Clause 42 U.S.C. § 1983 (Against All Defendants)

56. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth here.

57. The Equal Protection Clause prohibits state and local officials from intentionally treating a person differently because of race.

58. Defendants acted under color of state law when they exercised municipal authority over the Town-owned Warehouse, denied Plaintiff a continuation or renewal, locked him out, threatened penalties, and interfered with his property.

59. Defendants intentionally treated Plaintiff less favorably than similarly situated white operators who had been permitted to occupy and operate from the same Warehouse under informal or month-to-month arrangements.

60. Race was a motivating factor and a but-for cause of the materially adverse treatment Plaintiff received. The Town's departures from its prior course of dealing, shifting explanations, comparator evidence, and the sequence of events support the inference of discriminatory intent.

61. The individual Defendants personally participated in the discrimination and are liable in their individual capacities.

62. The Town is liable because the discriminatory refusal to lease or renew was made or ratified by the Town Council, the final policymaker for municipal real property, and because the decision and lockout were official policy or the product of a discriminatory municipal custom.

63. Defendants' conduct caused Plaintiff actual damages and entitles him to compensatory and nominal damages, equitable relief as appropriate, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

64. The individual Defendants acted with reckless or callous indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages against them in their individual capacities.

## COUNT II
## Race Discrimination in Contracting and Property Rights
## 42 U.S.C. §§ 1981 and 1982, Enforced Through 42 U.S.C. § 1983
## (Against All Defendants)

65. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth here.

66. Section 1981 guarantees Plaintiff the same right enjoyed by white citizens to make and enforce contracts, including the making, performance, modification, termination, and enjoyment of the benefits and conditions of a contractual relationship.

67. Section 1982 guarantees Plaintiff the same right enjoyed by white citizens to lease, hold, and convey real and personal property.

68. Plaintiff sought to continue, renew, or formalize a commercial tenancy for the Warehouse and to possess and use his business property on equal terms.

69. Defendants denied and impaired those contractual and property rights because of Plaintiff's race, while materially more favorable treatment had been afforded to white predecessors.

70. Because Defendants are state actors, Plaintiff enforces his rights under Sections 1981 and 1982 through Section 1983.

71. The Town is liable under the final-policymaker, official-policy, ratification, and custom allegations stated above.

72. Defendants' conduct caused the damages described above. Plaintiff is entitled to compensatory and nominal damages, appropriate equitable relief, fees and costs under 42 U.S.C. § 1988, and punitive damages against the individual Defendants.

## COUNT III

## Deprivation of Property Without Due Process Fourteenth Amendment and 42 U.S.C. § 1983 (Against All Defendants)

73. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth here.

74. Plaintiff had protected possessory interests in his inventory, equipment, records, and other personal property inside the Warehouse, and he had at minimum a colorable month-to-month possessory interest in the premises based on the Town's course of dealing and acceptance of performance.

75. Defendants intentionally deprived Plaintiff of meaningful access to and control over those interests by chaining and locking the Warehouse and maintaining the lockout.

76. The deprivation was foreseeable, authorized, directed, or ratified by municipal policymakers and was not merely a random, unauthorized act for which predeprivation process was impracticable.

77. Defendants did not provide Plaintiff with timely notice of the grounds for the lockout, a meaningful opportunity to be heard before the deprivation, or lawful judicial process authorizing the exclusion.

78. The post-lockout letters and later eviction-related activity did not cure the initial deprivation or the losses already caused.

79. The Town is liable because the deprivation was caused by an official decision, policy, ratification, or custom of the Town. The individual Defendants are liable because they personally directed, implemented, or maintained the deprivation.

80. Defendants' conduct caused Plaintiff actual damages and entitles him to compensatory and nominal damages, appropriate equitable relief, fees and costs under 42 U.S.C. § 1988, and punitive damages against the individual Defendants.

**COUNT IV**

**Unreasonable Seizure of Personal Property**

**Fourth and Fourteenth Amendments and 42 U.S.C. § 1983**

**(Against All Defendants)**

81. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth here.

82. By physically locking the Warehouse and preventing Plaintiff from exercising ordinary dominion and control over his inventory and other goods, Defendants meaningfully interfered with Plaintiff's possessory interests and seized his property.

83. The seizure was carried out without a warrant, writ of possession, judicial authorization, exigent circumstances, or other reasonable legal basis.

84. The seizure was unreasonable in scope and duration, particularly because Defendants knew the goods belonged to Plaintiff and continued to restrict access while the Town pursued inconsistent positions concerning the premises.

85. The Town is liable because the seizure was directed, adopted, ratified, or maintained by final municipal policymakers. The individual Defendants are liable for their personal participation.

86. Defendants' conduct caused Plaintiff actual damages and entitles him to compensatory and nominal damages, appropriate equitable relief, fees and costs under 42 U.S.C. § 1988, and punitive damages against the individual Defendants.

## COUNT V

## Breach of Contract / Wrongful Termination of Month-to-Month Tenancy (Against the Town, Pleaded in the Alternative)

87. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth here.

88. The Town's longstanding acceptance of occupancy and rent created an express or implied month-to-month tenancy concerning the Warehouse, or at minimum a contractual course of dealing that the Town represented would continue upon renewal or formalization.

89. Plaintiff succeeded to, assumed, or sought novation or renewal of that arrangement and performed or was ready, willing, and able to perform by paying the required rent and complying with lawful conditions.

90. The Town breached the agreement or wrongfully terminated the month-to-month tenancy by locking Plaintiff out without the required notice and without honoring the terms, representations, and course of dealing on which Plaintiff relied.

91. The South Carolina Tort Claims Act does not affect liability based on contract.

92. To the extent the Town contends that an ordinance was required to formalize a lease, Plaintiff pleads in the alternative that the Town may not invoke formalities selectively as a pretext for racial discrimination, and that the Town remains liable for amounts paid, accepted benefits, and other relief available in law or equity.

93. The Town's breach proximately caused Plaintiff's economic and consequential damages in an amount to be proven at trial.

## COUNT VI

## Conversion and Trespass to Chattels South Carolina Law and the South Carolina Tort Claims Act (Against the Town, Pleaded in the Alternative)

94. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth here.

95. Plaintiff owned or had the immediate right to possess the inventory, equipment, records, and other goods stored inside the Warehouse.

96. By locking the Warehouse, denying ordinary access, and exercising control over whether and when Plaintiff could retrieve his goods, the Town intentionally exercised dominion or control inconsistent with Plaintiff's rights.

97. Alternatively, the Town substantially interfered with Plaintiff's use and possession of the goods, constituting trespass to chattels.

98. The Town is the proper defendant for torts committed by its employees acting within the scope of official duty, subject to the South Carolina Tort Claims Act. Plaintiff does not seek punitive damages or prejudgment interest from the Town under this Count.

99. The Town's conduct proximately caused loss of use, business interruption, deterioration or damage, carrying costs, lost profits, and other actual damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and award:

A. A declaration that Defendants violated Plaintiff's rights under the Equal Protection Clause, 42 U.S.C. §§ 1981 and 1982, and the Fourth and Fourteenth Amendments;

B. Compensatory damages in an amount determined by the jury, including lost profits, loss of use, property damage, consequential losses, emotional distress, and other proven damages;

C. Nominal damages for each completed violation of Plaintiff's constitutional and statutory rights;

D. Punitive damages against the individual Defendants in their individual capacities;

E. Appropriate preliminary and permanent equitable relief, including relief necessary to prevent continued discriminatory interference with Plaintiff's property or business rights;

F. Prejudgment and post judgment interest to the extent permitted by law, excluding any relief prohibited under the South Carolina Tort Claims Act;

G. Reasonable attorney's fees and litigation expenses under 42 U.S.C. § 1988 and other applicable law;

H. Taxable costs; and

I. All other relief the Court deems just and proper.

**JURY DEMAND**

1. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted, this 29th day of October 2026.

/s/ Randolph Frails
**Randolph Frails**
South Carolina Bar No.: 15874

*Attorney for Plaintiff*

**Frails & Wilson LLC**
211 Pleasant Home Rd. Suite A-1
Augusta, Georgia 30907
Telephone: 706.855.6715
Facsimile: 706.855.7631
randyfrails@frailswilsonlaw.com

**VERIFICATION**

PERSONALLY APPEARED before the undersigned, an officer duly authorized by law to administer oaths, **ERIC HEARD**, who, after being duly sworn, deposes and states that the contents of the within and foregoing **COMPLAINT AND JURY DEMAND** are true and correct as to the best of his knowledge and belief.

______________________________
**ERIC HEARD**

Sworn and subscribed before me this.

29th day of October, 2026.

Kailee Hogland
______________________________
Notary Public

My commission expires: April 9th 2030

KAILEE HOGLAND
NOTARY PUBLIC
Richmond County
State of Georgia
My Comm. Expires April 9th 2030